## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jaquan Marquise Bailey, | |
| Plaintiff, | Civil No. 3:24-cv-00993-SVN |
| v. | |
| Joseph Riehl, et al, | |
| Defendants. | November 27, 2024 |

## RECOMMENDED RULING RE: MOTION FOR LEAVE TO PROCEED
### *IN FORMA PAUPERIS*

Plaintiff Jaquan Marquise Bailey, representing himself, filed a Complaint alleging that various Connecticut judges, prosecutors, law enforcement officers, and others conspired against him in violation of 42 U.S.C. § 1985(3) ("Section 1985") and deprived him of his constitutional rights in violation of 42 U.S.C. § 1983 ("Section 1983").[1]  ECF No. 1.  Plaintiff is requesting the Court's permission to proceed *in forma pauperis*, without prepaying the customary $402 filing fees.  ECF Nos. 2, 10.  A federal law, 28 U.S.C. § 1915 ("Section 1915"), permits him to do so if he submits an affidavit detailing his finances and demonstrating his inability to pay the fees.

When a plaintiff asks to proceed *in forma pauperis*, Section 1915 requires the Court to conduct two inquiries.  First, the Court examines the financial affidavit and determines whether plaintiff is truly unable to pay the fees.  28 U.S.C. § 1915(a).  Second, to ensure that plaintiff is

---

[1] Plaintiff brings all of his claims under Section 1983.  However, "claims for conspiracy to violate civil rights, even if brought under [Section] 1983, 'should actually be stated as a claim under [Section] 1985, which applies to conspiracies.'"  *Thomas v. DeCastro*, No. 14-CV-6409 (KMK), 2018 WL 1322207, at *12 (S.D.N.Y. Mar. 13, 2018) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)).  Accordingly, the Court construes the Complaint as asserting Plaintiff's conspiracy claim under Section 1985.

not abusing the privilege of filing a free lawsuit, the Court reviews the complaint and dismisses the case if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

For the reasons that follow, the Court permits Plaintiff to proceed *in forma pauperis* and recommends dismissal of each of Plaintiff's claims except (1) the Section 1983 claim for damages against Defendants Riehl, Butler, Bowerman, Zwickler, Fazzino, Murray, and an unidentified confidential informant in their official and individual capacities, and (2) the Section 1983 claim for damages against Defendants Lisso, Marucci, and an unidentified judicial marshal in their individual capacities.[2]

## I.    The First Inquiry: Reviewing the Financial Affidavit

"The threshold for a motion to proceed *in forma pauperis* is not high." *Fiebelkorn v. U.S.*, 77 Fed. Cl. 59, 62 (2007). Plaintiff does not need to demonstrate "absolute destitution." *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (*per curiam*). He only needs to demonstrate that prepaying the filing fees "would constitute a serious hardship" for him by submitting a financial affidavit "explaining in detail how he supports himself." *Dan M. v. Kijakazi*, No. 3:22-cv-00664 (SRU), 2022 WL 2069112, at *1-*2 (D. Conn. May 19, 2022) (citing *Fiebelkorn v. U.S.*, 77 Fed. Cl. at 62).

---

[2] Plaintiff does not name Judicial Marshal Marucci or the unidentified judicial marshal as defendants in this case. However, they are "mentioned throughout the body of the complaint as involved in the underlying alleged events." *Williams v. Doe*, No. 24 CIV. 4794 (PAE), 2024 WL 3723052, at *1 (S.D.N.Y. July 16, 2024) (internal citations omitted). Accordingly, the Court construes Plaintiff's claims against the "Judicial Marshals of G.A.23 New Haven" as claims against them, specifically. Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the Clerk of Court is directed to drop "Judicial Marshals of G.A.23 New Haven" as a defendant in this case, without prejudice, and add "Judicial Marshal Marucci" and "Unknown Judicial Marshal" without prejudice to any defenses that they may assert.

On June 3, 2024, Plaintiff filed a Motion to Proceed *In Forma Pauperis* and a financial affidavit.  ECF No. 2.  The Court denied that Motion because the affidavit did not include any details about how Plaintiff supports himself.  ECF No. 9, at 2-3.  The Court ordered Plaintiff to either revise and refile the affidavit with details about his income, assets, and any other sources of financial support, or otherwise pay the filing fees.  *Id.*  Consistent with Section 1915, the Court did not review the Complaint because it did not grant the Motion.  *Id.*

Now, Plaintiff has filed an Amended Motion for Leave to Proceed *In Forma Pauperis* and a revised financial affidavit.  ECF No. 10.  The revised affidavit clarifies that Plaintiff has been unemployed since December 2023, that his current monthly income is $291 in the form of SNAP benefits, that he owns no property or investments, and that he has no cash on hand.  ECF No. 10. Such details are sufficient for the Court to conclude that Plaintiff "cannot because of his poverty pay or give security for the [$402 filing fees] and still be able to provide himself . . . with the necessities of life."  *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).  The Amended Motion for Leave to Proceed *In Forma Pauperis* is **GRANTED** and the initial Motion for Leave to Proceed *In Forma Pauperis* is hereby **MOOT**.

## II.    The Second Inquiry: Reviewing the Complaint

### A.  Standard of Review

To ensure that Plaintiff is not abusing the privilege of commencing the case for free, the Court must review the Complaint and dismiss the case if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous when it "is based on an indisputably meritless legal theory" or when "it is clear that the defendants are immune from suit."  *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (citing *Neitzke v. Williams*, 490 U.S. 319, 325-327 (1989)).  A complaint fails to

state a claim on which relief may be granted when it lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted)). Courts "accept as true all of the allegations contained in [a] complaint [except] legal conclusions" when determining whether it is frivolous or fails to state a claim. *Id*. at 555. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Id*. Courts "liberally construe pleadings . . . submitted by *pro se* litigants" by "reading [them] to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. U.S*, 478 F.3d 489, 491 (2d Cir. 2007)). However, they "may not fill the gaps of a *pro se* plaintiff's complaint by imagining facts that are not alleged." *Mugabo v. Wagner*, No. 22-CV-930-A, 2024 WL 1621534, at *2 (W.D.N.Y. Apr. 15, 2024) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

When applying these standards to a Section 1983 claim, the Court must find some factual basis that a "person" was "acting under color of state law" when such person "deprived [plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d. Cir. 2010). And when reviewing a Section 1985 claim, the Court must find some factual basis that "two or more persons," *see* 42 U.S.C § 1985(3), "entered into an agreement" to deprive plaintiff of his constitutional rights, *see Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003), and were "motivated" to do so "by some racial or perhaps otherwise class-based, invidious discriminatory animus," *see Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir. 1999) (internal citations omitted). However, even factually sufficient Section 1983 or 1985 claims may not proceed to service of process when defendants are immune from liability.

*See, e.g.*, *Idlibi v. Burgdorff*, Nos. 23-838, 23-7384, 2024 WL 3199522 (2d Cir. Jun. 27, 2024) *cert. denied*, No. 24-261, 2024 WL 3199522 (Nov. 12, 2024) (affirming dismissal of a Section 1983 claim against a Connecticut Superior Court judge for allegedly relying upon false evidence to terminate plaintiff's parental rights because judges are immune from civil liability for judicial acts).

Courts typically dismiss *pro se* complaints that do not satisfy these standards of review without prejudice, meaning that plaintiff may file an amended complaint that addresses the court's concerns and satisfies Section 1915's requirements. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, that is not always the case. The U.S. Court of Appeals for the Second Circuit directs this Court to dismiss *pro se* complaints with prejudice, or without otherwise granting leave to amend, when the "[C]ourt can rule out any possibility, however unlikely it might be," that "an amendment will result in a claim being successfully pleaded." *Id*. For example, claims against a Connecticut Superior Court judge may be dismissed without leave to amend because "any attempt to amend [is] futile" pursuant to the doctrines of sovereign immunity and absolute judicial immunity. *Idlibi v. Burgdorff*, 2024 WL 3199522 at *4.

### B. The Defendants

Plaintiff sues the following defendants in both their individual and official capacities, as applicable: Connecticut Superior Court Judges Auden Grogins, Eugene Calistro, and Patrick Clifford (the "Judges"); Assistant State's Attorneys Matthew Kalthoff and Jacqueline Fitzgerald (the "Prosecutors"); Connecticut Public Defender Michael Alevy (the "Public Defender"); Connecticut Probation Officer Mike Lisso (the "Probation Officer"); a judicial marshal called "Marucci" and an unnamed judicial marshal of GA.23 New Haven (the "Judicial Marshals"); Officers Joseph Riehl and Brandon Butler, Sergeants Kevin Bowerman and Jordan Zwickler, and

Detectives Robert Fazzino and Sammy Murray of the West Haven Police Department (the "Police Officers"); the West Haven Police Department itself ("WHPD"); and an unnamed confidential informant (the "Informant").  ECF No. 1.

### C.  Allegations

The following allegations are taken from the Complaint and its Exhibits and accepted as true for the purpose of this Court's initial review.

In September or October 2022, five of the Police Officers—Defendants Riehl, Butler, Bowerman, Zwickler, and Fazzino—and a confidential informant utilized "unauthorized" electronic surveillance technology to record Plaintiff making "narcotics transactions" involving "crack cocaine."  *Id.*, ¶¶ 19, 20, 42; Ex. A.  On October 18, 2022, WHPD officers arrested Plaintiff based on information gathered from the surveilled narcotics transactions.  *Id.*, ¶ 21.  While executing the arrest warrant, they seized, among other things, firearms.  *Id.*

In February 2023, State's Attorney Kalthoff stated "during a court proceeding" that if criminal charges are brought against Plaintiff alleging his unlawful possession of the seized firearms, they will be brought "in New Haven."  *Id.*, ¶ 22.  Plaintiff was arrested on such charges in May 2023 and transported first to the WHPD for processing and booking, then to GA.23 New Haven for holding.  *Id.*, ¶ 23-24; Ex. C.  Plaintiff was eventually released pursuant to a bond agreement that the presiding judge "coerced" Plaintiff into accepting.  *Id.*, ¶ 24.  Although the bond agreement did not require Plaintiff to provide urine samples, Probation Officer Lisso reported to the court that Plaintiff was required to provide them and was refusing to do so.  *Id.*, ¶ 40.  Plaintiff alleges that the Probation Officer had "conspired with the court" to sabotage Plaintiff's release and subject him to further detention.  *Id.*

All criminal proceedings regarding Plaintiff's alleged unlawful possession of firearms subsequently occurred in New Haven.  *Id.*, ¶ 26.  Plaintiff alleges that Judge Grogins and State's Attorney Kalthoff knew that such proceedings should have properly occurred in Milford—as he had been arrested by WHPD officers and processed at the WHPD—and "conspired" to improperly transfer his case to New Haven.  *Id.*, ¶¶ 33, 34.

In November 2023, Prosecutor Fitzgerald filed a motion to collect Plaintiff's DNA, presumably at a probable cause hearing, to determine if it matched the DNA on the firearms seized during Plaintiff's arrest in October 2022.  *Id.*, ¶¶ 27, 41; Ex. B.  When Plaintiff refused to surrender his DNA, Judge Clifford held him in contempt, ordered him detained, and prevented him from posting his $1 bail.  *Id.*, ¶¶ 28, 31.  Afterwards, the Judicial Marshals and Detective Murray physically assaulted Plaintiff.  *Id.,* ¶ 28.  Judicial Marshal Marucci choked him, threatened to throw him down a stairwell, and detained him in an inhabitable holding area that was under construction and lacked proper air circulation.  *Id.*, ¶ 29.

The following day, Plaintiff was brought before Judge Clifford and agreed, "under . . . duress," to surrender his DNA.  *Id.*, ¶ 31.  Judge Clifford did not provide Plaintiff with a private setting to do so.  *Id.*, ¶ 32.  Rather, Judge Clifford "humiliate[ed]" Plaintiff by allowing WHPD officers to handcuff him and swab his mouth in open court, as family members and members of the public watched from the gallery.  *Id.*, ¶ 30.  The Complaint indicates that Plaintiff resisted the warrant for his DNA because it was not properly completed and "exceeded the statute of limitations."  *Id.*, ¶ 32.

Plaintiff subsequently filed a motion to suppress the DNA evidence and submitted a notice refusing court-appointed counsel because he perceived "a conflict of interest . . . as the Judge, Prosecutor, and Public Defender are all funded by [the State], which undermines [their]

impartiality." *Id.*, ¶ 36; Ex. B.  Judge Clifford appointed Public Defender Alevy as Plaintiff's counsel and refused to consider his motion.  *Id.*, ¶ 37; Ex. B.  Judge Clifford stated that he was appointing the Public Defender to represent Plaintiff because Plaintiff had refused to affirm his understanding of the charges against him, his rights, the trial proceedings, and "the pitfalls of representing himself."  *Id.* at Ex. B.  Judge Clifford also stated that he would not consider Plaintiff's motion because Plaintiff himself, rather than his court-appointed counsel, had filed it. *Id.*  Plaintiff alleges that Judge Grogins ultimately placed Plaintiff's case on the trial list without hearing Plaintiff's motion.  *Id.*, ¶ 39.  The Complaint indicates that the trial relating to Plaintiff's alleged possession of firearms occurred the week of June 12, 2024.  *Id.* at Ex. B.

Based on these allegations, Plaintiff claims that Defendants deprived him of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution in violation of Section 1983, and that they conspired to do so in violation of Section 1985.  *Id.*, ¶¶ 42-46.  He seeks damages under  Sections 1983 and 1985, a declaration that Defendants violated his constitutional rights, and to enjoin Defendants from future constitutional violations.  *Id.* at 12, ¶¶ 1-6.

### D.  Claims for Injunctive and Declaratory Relief

The threshold for standing to seek injunctive and declaratory relief under Section 1983 differs depending on various factors, including whether the defendant against whom the relief is sought is a State or a municipality, an agency or an agent, a judicial officer or a law enforcement officer—and many more.  At minimum, however, a plaintiff requesting such relief "must show a likelihood that he or she will be injured in the future" by the defendant.  *Peck v. Baldwinsville Cent. School Dist.*, 351 Fed. Appx. 477, 479 (2d Cir. 2009) (citing *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).  That is because federal courts have "no jurisdiction" to

consider requests for injunctive or declaratory relief when "the underlying questions are moot," or—in other words—when "it is most unlikely that [plaintiff] will [again] come into conflict with [defendants] in circumstances similar to the ones presented [in the complaint], and with the same results." *Pancake v. McCarthy*, 806 F. Supp. 378, 379-380 (E.D.N.Y. 1992) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)); *see also* U.S. CONST. art. III, § 2 (federal judicial power only extends to "Cases" and "Controversies").

The Complaint contains numerous allegations that Defendants conspired to violate, and did violate, Plaintiff's constitutional rights in the past, during Connecticut's investigation of him for allegedly selling narcotics and prosecution of him for allegedly possessing firearms. ECF No.1. But it contains no allegations about the likelihood of Defendants violating his rights in the future. On the contrary, the Complaint indicates that the WHPD's investigation into Plaintiff's narcotics dealings is complete, as it has already resulted in arrests and charges, and that his criminal trial for unlawfully possessing firearms is complete. *Id.* at Ex. B. The Court therefore concludes that Plaintiff is not "realistically threatened" by the repetition or continuation of the unconstitutional acts alleged in the Complaint and recommends that Plaintiff's claims for injunctive and declaratory relief be **DISMISSED** with prejudice. *Curtis v. City of New Haven*, 726 F.2d 65, 67 (citing the "stringent standards" for standing to seek injunctive relief, as set forth in *Los Angeles v. Lyons*, 461 U.S. 95 (1983)).

### E. Claims for Damages Against Defendants in their Official Capacities

> **1. Plaintiff's claims for damages against the Judges, the Prosecutors, the Public Defender, the Probation Officer, and the Judicial Marshals in their official capacities must be dismissed because they are barred by the Eleventh Amendment.**

"Generally, a suit for recovery of money may not be maintained against [Connecticut]" in this Court. *Auguste v. Dep't of Corrections*, 424 F. Supp. 2d 363, 367 (D. Conn. 2006) (citing

*Florida Dep't of State v. Treasure Salvors*, 458 U.S. 670, 684 (1982)). That is because the Eleventh Amendment excludes from the Court's subject matter jurisdiction "suits . . . by private parties against a state, absent [such state's] consent to suit or an express statutory waiver of immunity." *Idlibi v. Burgdorff*, 2024 WL 3199522, at *2. "Eleventh Amendment immunity extends to state agents that are, effectively, arms of a state." *Id.* (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). Courts determine whether a defendant is an "arm of the state" by examining, among other things, "the degree to which [defendant] is supervised by the state" and the "source of funds for satisfying judgments rendered against [defendant]." *Rose R. v. Connelly*, 889 F.2d 435, 437 (2d Cir. 1989); *see also Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009) (identifying various factors that courts consider when determining Eleventh Amendment immunity but affirming that the essential inquiry is "whether [permitting] a suit against [the defendant] would threaten the integrity of the state and expose its treasury to risk").

The Judges, the Prosecutors, the Public Defender, the Probation Officer, and the Judicial Marshals are all "arms of the state" of Connecticut because they are supervised and funded by the State of Connecticut. *See* Conn. Gen. Stat. § 51-1a(a) (the Judicial Branch of Connecticut shall consist of, among other things, the "Superior Court[s]" and "the Public Defender Services"); Conn. Gen. Stat.§ 51-1d (the Judicial Branch shall consist of, among other things, "Adult Probation Services"); Conn. Gen. Stat. § 6-32f(a) (the Judicial Branch is "responsible for courthouse security and shall employ judicial marshals for such purpose."); *see also Good v. Hartford GA-14 Court*, Nos. 3:20 CV 1830 (KAD), 3:20 CV 1831 (KAD), 3:20 CV 1832 (KAD), 2021 WL 11581030 at *3 (D. Conn. Jan. 20, 2021) (holding that superior court judges and state's attorneys are arms of the State of Connecticut under the Eleventh Amendment). Accordingly, the Court must dismiss Plaintiff's claims against them in their official capacities unless Plaintiff can point to a statutory

waiver of Connecticut's Eleventh Amendment immunity or demonstrate that Connecticut has consented to Plaintiff's lawsuit.

In creating causes of action like Sections 1983 and 1985, "Congress did not intend to override well-established immunities" for state agents, including Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989); *see also Chris H. v. New York*, 764 Fed. Appx. 53, 55 (2d Cir. 2019). Nor has Connecticut waived its Eleventh Amendment immunity for Section 1983 and 1985 claims. *See Turner v. Boyle*, 116 F. Supp. 3d 58, 73 (D. Conn. 2015). For these reasons, the Court concludes that the Eleventh Amendment bars Plaintiff's claims for damages against the Judges, the Prosecutors, the Public Defender, the Probation Officer, and the Judicial Marshals in their official capacities and recommends that such claims be **DISMISSED** without prejudice but without leave to amend.[3]

### 2. Plaintiff's Section 1983 claim against the WHPD must be dismissed because the WHPD is not a "person" under Section 1983.

The WHPD, the Police Officers, and the Informant are not "arms of the state" of Connecticut for purposes of the Eleventh Amendment, as they are directly supervised by the West Haven Board of Police Commissioners and primarily funded by the City of West Haven. *See* Conn. Gen. Stat. § 7-274 ("any town may, by ordinance, establish a board of police commissioners

---

[3] "Because the Court lacks subject matter jurisdiction" over these claims, "it cannot dismiss [them] with prejudice." *Mendez v. Albany Cnty. Dep't of Soc. Servs.*, No. 1:19-CV-468 (LEK/CFH), 2019 WL 5485178, at *2 (N.D.N.Y. Oct. 25, 2019) (citing *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)). Accordingly, the Court dismisses these claims without prejudice so that Plaintiff may refile them, if he wishes, "in a court that does have subject matter jurisdiction, such as [a] state court." *Hernandez v. Conriv Realty Assoc.*, 182 F.3d at 123). At the same time, the Court denies Plaintiff leave to amend the Complaint with regard to these claims, as their "jurisdictional defects [can]not be cured by an amendment." *Mendez v. Albany Cnty. Dep't of Soc. Servs.*, 2019 WL 5485178, at *2 (dismissing without prejudice for lack of subject matter jurisdiction but denying leave to amend); *see also Hamza v. Midas, Inc.*, No. 1:23-CV-0543 (MAD/CFH), 2023 WL 5932942, at *5 (N.D.N.Y. Sept. 11, 2023) (same).

. . . for the purpose of organizing and maintaining a police department in such town"); Conn. Gen. Stat. § 7-277 ("the expenses, salaries and all costs of maintenance and equipment for such police department shall be paid by such town").  Plaintiff may therefore bring a Section 1983 claim for damages against them by plausibly alleging that each is a "person" who acted "under color of state law" to deprive him of his constitutional rights.  *Cornejo v. Bell*, 592 F.3d at 127.

Construed liberally, the Complaint alleges that the Police Officers and the Informant violated Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments by unlawfully surveilling him during several staged "narcotics transactions," arresting him based on the information they gathered from unlawfully surveilling him, and physically assaulting him while he was detained for refusing to surrender his DNA.  ECF No. 1, ¶¶ 19-21, 28.  These allegations are sufficient for Plaintiff's Section 1983 claim for damages against them in their official capacities to proceed to service of process.[4]

However, the Court recommends that all of Plaintiff's Section 1983 claims against the WHPD itself be **DISMISSED** with prejudice, as a municipal police department is not a "person" within the meaning of Section 1983.  *See Johnson v. W. Hartford Police Dep't*, No. 3:21-cv-413 (CSH), 2022 WL 4356430 at *3 (D. Conn. Sept. 19, 2022) (quoting *Nicholson v. Lenczewski*, 356

---

[4] Plaintiff has provided enough information in the Complaint about the Informant and the Judicial Marshals to allow for service of process.  Plaintiff has identified their respective employers as the West Haven Police Department and G.A.23 New Haven, which the Court directs the U.S. Marshals Service to use as their service addresses.  *See* Fed. R. Civ. P. 4(c)(3) ("Marshals Service must be appointed to serve process when plaintiff is authorized to proceed *in forma pauperis*").  However, the Court advises Plaintiff that he "is entitled to assistance from the Court in ascertaining an unidentified defendant's identity and proper service address" if the Marshals Service cannot serve process on any such defendant.  *Montes v. Miller*, No. 7:24-CV-4141 (CS), 2024 WL 3889080, at * 3 (S.D.N.Y. Aug. 21, 2024) (quoting *Valentin v. Dinkens*, 121 F.3d 72, 76 (2d Cir. 1997)); *see also Johnson v. Morton*, 21 CV 986 (VB), 2021 WL 2201420, at *1-2 (ordering the NY State Attorney General to identify various NY state corrections officers after "the U.S. Marshals Service docketed a Receipt and Return of Process").  Plaintiff should inform the Court if such assistance becomes necessary.

F. Supp. 2d 157, 164 (D. Conn. 2005) ("a municipal police department . . . is not a municipality nor a 'person' within the meaning of Section 1983")).

### 3. *Plaintiff's Section 1985 claim against the WHPD must be dismissed because the WHPD is not a "person" under Section 1985.*

To state a Section 1985 claim against the WHPD, the Police Officers, or the Informant, Plaintiff must plausibly allege that such Defendants are "persons," *see* 42 U.S.C § 1985(3), who "entered into an agreement" to deprive him of his rights, *see Webb v. Goord*, 340 F.3d at 110, and were "motivated" to do so "by some racial or perhaps otherwise class-based, invidious discriminatory animus," *see Thomas v. Roach,* 165 F.3d at 146.  The Complaint contains no such factual allegations, however, only "conclusory, vague, or general allegations of conspiracy." *Webb v. Goord*, 340 F.3d at 110-111 (quoting *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)). For this reason, the Court recommends that Plaintiff's Section 1985 claim against the Police Officers and the Informant in their official capacities be **DISMISSED** without prejudice.

Whether municipal police departments, like the WHPD, are "persons" capable of being sued under Section 1985 is an open question in the Second Circuit.  This Court has concluded that municipal police departments are incapable of being sued under Section 1983 because, "as a matter of [state] law," they are "purely instrumentalities of [a] municipality with no separate identity." *Nicholson v. Lenczewski*, 356 F. Supp. 2d at 164 (quoting *PBA Loc. No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 825 (D.N.J. 1993)).  The Court has since extended that line of reasoning beyond Section 1983, to conclude that municipal agencies are not subject to various other kinds of lawsuits.  *See, e.g., Parlato v. Town of East Haven*,  No. 3:22-CV-1094 (SVN), 2023 WL 5206873 at *12 (D. Conn. August 14, 2023) (municipal fire departments are not capable of being sued under Title VII and the CFEPA); *McDonald v. Stamford Police Dep't*, No. 3:21-CV-00723 (KAD), 2022 WL 1471249, at *3 (D. Conn. May 10, 2022), *aff'd sub nom. McDonald v. Molina*,

No. 22-1261-CV, 2023 WL 2229365 (2d Cir. Feb. 27, 2023) (municipal police departments are not capable of being sued for state common law claims).  That is because an entity's "capacity to sue or be sued is determined . . . by the law of the state where the court is located," *see* Fed. R. Civ. P. 17, and Connecticut's courts have determined that "the Connecticut General Statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued." *Alexander v. U.S. Postal Serv.*, No. 3:19-CV-1295 (VLB), 2020 WL 4735269, at *3 (D. Conn. Aug. 14, 2020) (internal citations omitted).  By that same reasoning, the Court concludes that municipal police departments are no more capable of being sued under Section 1985 than they are under Section 1983 and recommends that Plaintiff's Section 1985 claims against the WHPD be **DISMISSED** with prejudice.

### F.  Claims Against Defendants in their Individual Capacities

When a state or local official "is sued for damages in his individual capacity, he may, depending . . . on the nature of the function[s he] perform[s] . . . be entitled to absolute immunity or qualified immunity." *Emiabata v. Bartolomeo*, No. 3:21-CV-00776 (OAW), 2022 WL 4080348, at *8 (D. Conn. Jan. 3, 2022) (citing *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993)).  Absolute immunity "defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Id*. (citing *Imbler v. Pachman*, 424 U.S. 409, 419 n.13 (1976)). Qualified immunity "depends on the circumstances and motivations of the official's actions, as established by the evidence [presented] at trial" or obtained during discovery. *Id.*  "If a *pro se* plaintiff's complaint reveals that the state official is entitled to an absolute, rather than a qualified, immunity, [then] the complaint can and should be dismissed." *Id*.  For the reasons that follow, the Court concludes that the Judges and the Prosecutors are entitled to absolute immunity

14

and recommends dismissal of Plaintiff's Section 1983 and 1985 claims against them in their individual capacities with prejudice.

> ### 1. *Plaintiff's Section 1983 and 1985 claims for damages against the Judges in their individual capacities must be dismissed pursuant to the doctrine of absolute judicial immunity.*

A "long line" of precedents acknowledges that judges enjoy absolute immunity from civil liability in their individual capacities for acts that are "judicial in nature" and did not occur "in the complete absence" of their jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 10, 12 (1991) (internal citations omitted); *see also Turner v. Boyle*, 116 F. Supp. 3d at 82 ("absolute immunity extends to all civil suits, including suits brought under Section 1983 and Section 1985").  "[A]cts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Biven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  "The scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."  *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Courts have long recognized that "unfairness and injustice to a litigant may result on occasion" from immunizing judges so absolutely.  *Mireles v. Waco*, 502 U.S. at 10 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871); *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  Nevertheless, "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. at 356-57 (quoting *Bradley*, 80 U.S. at 351).

All of Plaintiff's allegations about the Judges arise out of criminal cases brought against him in the New Haven venue of the Connecticut Superior Court, well within the broad scope of their jurisdiction as Connecticut Superior Court judges.  ECF No. 1, ¶¶ 22-26, 28, 31-39.  He does not allege the sort of abnormal courtroom behavior for which a judge might be deprived of his absolute immunity.  *See, e.g., Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974) (holding that

a judge was not entitled to judicial immunity because his "decision to personally evict someone from a courtroom" by physically assaulting him "is simply not an act of a judicial nature"). On the contrary, choosing venues, approving bond agreements, granting warrants, ruling on motions, holding parties in contempt when they defy court orders, and detaining such parties when they do not relent are all acts "normally" performed by judges, *see Stump v. Sparkman*, 435 U.S. at 362, and essential to "a judge's duty to decide all cases within his jurisdiction that are brought before him," *see Pierson v. Ray*, 386 U.S. at 554. The Court therefore concludes that the Judges are absolutely immune from civil liability for their alleged conduct and recommends that Plaintiff's Section 1983 and 1985 claims against them in their individual capacities be **DISMISSED** with prejudice.

> **2.** ***Plaintiff's Section 1983 and 1985 claims for damages against the Prosecutors in their individual capacities must be dismissed pursuant to the doctrine of absolute prosecutorial immunity.***

Likewise, prosecutors are absolutely immune from civil liability for "virtually all acts, regardless of motivation, associated with [their] function as [the State's] advocate" during a criminal proceeding. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). This is true even for "reprehensible" acts like initiating a case "for purposes of retaliation" or "purely political reasons," prosecuting a case "pursuant to a conspiracy," or knowingly using "perjured testimony" at trial. *Shmueil v. City of N.Y.*, 424 F.3d 231, 237-238 (2d Cir. 2005). Although the U.S. Supreme Court and the U.S. Court of Appeals for the Second Circuit have only applied the doctrine of absolute prosecutorial immunity to Section 1983 cases, this Court "recognizes the same absolute immunity in Section 1985 cases." *Halpern v. City of New Haven*, 489 F. Supp. 841, 844 (D. Conn. 1980).

All of Plaintiff's allegations against the Prosecutors arise out of motions filed and arguments made "during a court proceeding" related to their prosecutions of Plaintiff for allegedly

selling narcotics or allegedly possessing firearms in violation of the laws of Connecticut. ECF No. 1, ¶¶ 22, 27, 33, 34. Accordingly, the Court concludes that the Prosecutors are absolutely immune from civil liability for their alleged conduct and recommends that Plaintiff's Section 1983 and 1985 claims against them in their individual capacities be **DISMISSED** with prejudice.

### 3. *Plaintiff's Section 1983 claim for damages against the Probation Officer and the Judicial Marshals in their individual capacities may proceed to service of process.*

Unlike judges and prosecutors, probation officers and judicial marshals only enjoy "absolute immunity" from civil liability for a limited set of "judicial or prosecutorial" acts. *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (internal citations omitted). Probation officers are absolutely immune for "preparing and furnishing presentence reports to the court," "initiating parole revocation proceedings," and "presenting a case for revocation to hearing officers." *Id.* (citing *Dorman v. Higgins,* 821 F.2d 133, 137 (2d Cir. 1999); *Scotto v. Alemanas*, 143 F.3d 105, 112 (2d Cir. 1998)). Judicial marshals are absolutely immune for conduct that is "specifically directed by [a] judge." *Braswell v. Corley*, No. 311–CV–1565 (MPS), 2015 WL 575145, at *18-20 (D. Conn. Feb. 11, 2015) (citing *Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001); *Martin v. Bd. of Cnty. Comm'rs*, 909 F.2d 402 (10th Cir.1990)).

Plaintiff alleges that Probation Officer Lisso falsely reported that Plaintiff was violating his bond agreement by refusing to provide urine samples. ECF No. 1, ¶ 24, 40. The Probation Officer is not absolutely immune for doing so, as the "filing of a violation report" is not a "judicial or prosecutorial" act but rather an "investigatory" act. *Dettelis v. Sharbaugh,* 919 F.3d at 164 (citing *Scotto v. Alemanas*, 143 F.3d at 112). Plaintiff alleges that the Judicial Marshals physically assaulted him, threatened him, and detained him in an uninhabitable holding area while enforcing Judge Clifford's order that Plaintiff be detained. ECF No. 1, ¶ 28, 29. Although the Judicial

Marshals are absolutely immune from civil liability for detaining Plaintiff pursuant to Judge Clifford's order, they are not absolutely immune for allegedly using excessive force to detain him. *See Braswell v. Corley*, No. 311–CV–1565 (MPS), 2015 WL 575145, at *19 (D. Conn. Feb. 11, 2015) (finding that a judicial marshal was not entitled to absolute immunity for "applying force against [plaintiff] in the elevator, twisting his handcuffs while laughing at him, dropping him . . . and ignoring his repeated cries for help" while enforcing a judge's direction to "bring him to the courtroom").  For these reasons, the Court concludes that Plaintiff may proceed with the Section 1983 claim against the Probation Officer and the Judicial Marshals in their individual capacities and that, construed liberally, Plaintiff's allegations are sufficient for the claim to proceed to service of process under Section 1915.[5]

> **4. *Plaintiff's Section 1983 claim for damages against the Public Defender in his individual capacity must be dismissed because he was not acting under color of state law when he represented Plaintiff.***

The Public Defender, the Police Officers, and the Informant are not absolutely immune from civil liability under any of these doctrines because their actions are not "judicial in nature." *Mireles v. Waco*, 502 U.S. at 12 (internal citations omitted); *see also, Thomas v. Roach*, 165 F.3d at 142.  Plaintiff may therefore bring Section 1983 claims for damages against them by plausibly alleging that each is a "person" who acted "under color of state law" to deprive him of his

---

[5] The Probation Officer and the Judicial Marshals may be immune from Section 1983 liability for their alleged conduct pursuant to the doctrine of qualified immunity. *Braswell v. Corley*, 2015 WL 575145, at *20.  However, the Court need not consider whether they are entitled to qualified immunity at this initial stage of the litigation, as it is "an affirmative defense that must be pleaded by a defendant official" after service of process.  *Harlow v. Fitzgerald*, 57 U.S. 800, 815 (1982) (recognizing that "government officials performing discretionary functions generally are shielded from liability for civil damages [pursuant to qualified immunity] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

constitutional rights. *Cornejo v. Bell*, 592 F.3d at 127. As discussed, the Complaint alleges that the Police Officers and the Informant unlawfully surveilled him, unlawfully arrested him, and physically assaulted him. *See supra* Part II, Section E, Number 2 (citing ECF No. 1, ¶¶ 19-21, 28). The Court concludes that such allegations are sufficient for Plaintiff's Section 1983 claim against the Police Officers and the Informant in their individual capacities to proceed to service of process under Section 1915.[6]

Conversely, the Court recommends that Plaintiff's Section 1983 claim against the Public Defender in his individual capacity be **DISMISSED** with prejudice, as "public defenders do not act under color of state law" within the meaning of Section 1983 "while defending a criminal action." *Nicholson v. Lenczewski*, 356 F. Supp. 2d at 162 (citing *West v. Atkins*, 487 U.S. 42, 50 (1988) (finding that a public defender representing a criminal defendant "is not acting on behalf of the State" but on behalf of the criminal defendant as the State's "adversary").

> ### 5. *Plaintiff has failed to state a Section 1985 claim against the Probation Officer, the Judicial Marshals, the Public Defender, the Police Officers, and the Informant in their individual capacities.*

Plaintiff may likewise bring Section 1985 claims against the Probation Officer, the Judicial Marshals, the Public Defender, the Police Officers, and the Informant in their individual capacities for their alleged conduct. However, as discussed, the Complaint does not contain any factual allegations to state a Section 1985 claim, only "conclusory, vague, or general allegations of

---

[6] The Police Officers and the Informant may also be immune from Section 1983 liability for their alleged conduct pursuant to the doctrine of qualified immunity. *See Johnson v. W. Hartford Police Dep't*, 2022 WL 4356430, at *4 (acknowledging that qualified immunity "shields" law enforcement officers from liability unless such officers "acted 'under color of state law' in violation of 'clearly-established rights of which an objectively reasonable official would have known'") (citing *Thomas v. Roach*, 165 F.3d at 142). However, the Court need not consider whether they are entitled to qualified immunity at this initial stage of the litigation, as it is "an affirmative defense that must be pleaded by a defendant official" after service of process. *Harlow v. Fitzgerald*, 57 U.S. at 815.

conspiracy." *Webb v. Goord*, 340 F.3d at 110-111 (quoting *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d. Cir. 1997); *see also supra* Part II, Section E, Number 3. Accordingly, the Court recommends that Plaintiff's Section 1985 claim against the Probation Officer, the Judicial Marshals, the Public Defender, the Police Officers, and the Informant in their individual capacities be **DISMISSED** without prejudice.

### III.    Conclusion

For all the foregoing reasons, the Court grants Plaintiff's Amended Motion for Leave to Proceed *In Forma Pauperis* and recommends that the following claims may proceed to service of process under Section 1915:

- Plaintiff's Section 1983 claim for damages against the Police Officers and the Informant in their official and individual capacities; and

- Plaintiff's Section 1983 claim for damages against the Judicial Marshals and the Probation Officer in their individual capacities.

The Court recommends that the following claims be dismissed without prejudice, meaning that Plaintiff may file an amended complaint in this Court containing sufficient factual allegations to state a claim and proceed to service of process:

- Plaintiff's Section 1985 claim for damages against the Police Officers and the Informant in their official capacities; and

- Plaintiff's Section 1985 claim for damages against the the Probation Officer, the Judicial Marshals, the Public Defender, the Police Officers, and the Informant in their individual capacities.

The Court recommends that the following claims be dismissed with prejudice or otherwise without leave to amend, meaning that Plaintiff may not file an amended complaint in this Court containing additional factual allegations pertaining to such claims:

- Plaintiff's claims for declaratory and injunctive relief against all Defendants;

- Plaintiff's Section 1983 and 1985 claims for damages against the Judges, the Prosecutors, the Public Defender, the Probation Officer, and the Judicial Marshals in their official capacities;

- Plaintiff's Section 1983 and 1985 claims for damages against the WHPD;

- Plaintiff's Section 1983 and 1985 claims for damages against the Judges and the Prosecutors in their individual capacities; and

- Plaintiff's Section 1983 claim against the Public Defender in his individual capacity.

Finally, the Court directs the Clerk of Court to drop "Judicial Marshals of G.A.23 New Haven" as defendants in this case, without prejudice, and add "Judicial Marshal Marucci" and "Unknown Judicial Marshal" as defendants without prejudice to any defenses that they may assert.

This is a recommended ruling by a U.S. Magistrate Judge, to which Plaintiff may object under Rule 72 of the Federal Rules of Civil Procedure and Rule 72 of the Local Rules of Civil Procedure for the District of Connecticut. Plaintiff must file any such objection within nineteen days of this recommendation, by **December 16, 2024**. *See* Fed. R. Civ. P. 72(b)(2) (establishing that objections to recommended rulings must be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (adding five days for parties who, like Plaintiff, will receive notice of the recommended ruling by mail). If Plaintiff fails to file a timely objection, he may not thereafter assign as error a defect in the Magistrate Judge's recommendation, *see* D. Conn. L. Civ. R. 72.2(a), or seek appellate review, *see Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

If Plaintiff would like assistance with this case, he may contact Attorney Cat Itaya of the Federal Pro Se Legal Assistance Program at (203) 850-7720.  The Federal Pro Se Legal Assistance Program provides free, limited-scope legal services to self-represented litigants with cases in this Court who cannot afford to hire an attorney.

SO ORDERED.

*/s/ Maria Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge